(163 App. Div. 486).

CITY OF NEW YORK v. CONTINENTAL ASPHALT PAVING CO. et al.
(No. 6095.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. MUNICIPAL CORPORATIONS (§ 368*)—PAVING CONTRACTS—CONSTRUCTION—ACCEPTANCE.

A street paving contract required the contractor to maintain it in good condition for five years after completion and acceptance. The contractor, after completing 97 per cent. of the work, was delayed a year on the remaining part because the city permitted abutting owners to obstruct the street by building operations. *Held* that, as the contractor was delayed through no fault of his own, the five-year period as to the 97 per cent. would run from the completion thereof, and not from the completion of the whole work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 901; Dec. Dig. § 368.*]

2. MUNICIPAL CORPORATIONS (§ 356*)—PAVING CONTRACTS—CONSTRUCTION—ACCEPTANCE.

Where a city contracts for the repair of a street, there is an implied obligation upon its part to give the contractor access to the place at which the work is to be performed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 888; Dec. Dig. § 356.*]

Ingraham, P. J., and Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by the City of New York against the Continental Asphalt Paving Company and others. Judgment for plaintiff, and defendants appeal. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

L. Laflin Kellogg, of New York City, for appellants.
E. Crosby Kindleberger, of New York City, for respondent.

SCOTT, J. This is an action against a street paving company and its sureties for damages resulting from an alleged failure of the paving company to comply with the terms of its contract with the city as to keeping the pavement laid by it in repair.

The contract was dated April 13, 1903, and provided for paving with asphalt pavement Twenty-Third street from Avenue A to Broadway in the city of New York. By its terms the contractor was required to begin the work on such date as the president of the borough shall notify it to begin. The work was accordingly begun in the latter part of September or the early part of October, 1903, and was entirely completed by October 24, 1903, except a very small portion thereof, estimated to have amounted to not more than 3 per cent. of the whole work. The portion of the street not paved consisted of a strip between Madison and Fourth avenues which was occupied and in use by a builder engaged in the construction of a large building, and which was so barricaded off that it was impossible for the paving contractor to pave the surface. The surface of the street was thus occupied un-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der a series of permits issued by the city of New York commencing in July, 1903, and extending until October, 1904. As soon as the obstruction had been removed, the paving contractor paved the portion of the street which had been thus obstructed. It appears that the officers of the paving contractor frequently, but vainly, protested to the city authorities against being thus prevented from completing its work, and even asked for a final certificate as to the work done, to the end that it might obtain a release of the percentage retained by the city to insure the full performance of the work. So much of the work as was completed in 1903 was at once thrown open to public traffic. The final certificate was not given until October 18, 1904.

The contract provided that the contractor should "maintain said pavement in good condition to the satisfaction of the president of the borough for the period of five years from the final completion and acceptance thereof," and to carry out this provision it was further provided that the contractor should, when notified so to do by the president of the borough, repair and make good any defects which should develop "at any time during the period of five years from the date of the acceptance of the whole work."

The repairs, for the refusal to make which defendants are now sued, were required to be made wholly in these parts of the street in which the pavement had been completed in October, 1903, except possibly a small and negligible portion not affecting more than half a dozen square feet. The earliest notice to repair proven upon the trial was dated March 16, 1909, which was more than five years after the greater portion of the work had been completed and put in public use as above detailed, but less than five years after the completion of the entire work and the granting of the final certificate.

[1, 2] The plaintiff's contention is that the period of five years during which the contractor was bound to keep the pavement in repair did not begin to run until the whole work had been completed and formally accepted by the city and a final certificate given. If this contention be upheld, the result will be that, as to 97 per cent. of the work done, the contractor's obligation to keep the pavement in repair will be extended to six years through no fault of its own, but solely in consequence of the act of the city in permitting a portion of the surface to be paved to be so occupied that the contractor could not complete his work. Such a result would be manifestly inequitable. In every contract of this nature there is an implied obligation on the part of the employer to give to his contractor access to the place at which the work is to be performed and reasonable facilities for performing it. Mansfield v. N. Y. C. & H. R. R. R. Co., 102 N. Y. 205–213, 6 N. E. 386; Del Genovese v. Third Ave. R. R. Co., 13 App. Div. 412, 43 N. Y. Supp. 8, affirmed 162 N. Y. 614, 57 N. E. 1108. The contractor in this case was bound by his contract to commence work when ordered so to do by the borough president, and to proceed to its completion promptly. This he did so far as he was able, and his inability to completely finish it was due to the positive act of the city in granting permits for the occupation by another of a part of the street. As to the portion so occupied the contractor was powerless. He could not

gain access except by the act of the city, and it not only refused to act, but continued to renew the permits for occupation by the builders.

The case is entirely similar to one recently decided in this court. City of New York v. Interstate Paving Co., 151 App. Div. 714, 136 N. Y. Supp. 195. In that case, as in this, the contract was for the paving of a street; a part of the work was completed, but the remainder could not be completed because another contractor was working there; the completed part was thrown open to public traffic, but final acceptance and the giving of the final certificate was postponed until the whole work had been completed. The city made the same claim in that case as it does in this, to wit, that the contractor was to keep the pavement for the whole extent of the contract distance in repair for a period of five years from the date of the completion of all the work. For reasons clearly stated by Mr. Justice Dowling which need not here be reiterated, this court said, "We do not think the contract can reasonably be so construed." In my opinion the same reasoning applies to the present case, and the same conclusion must be arrived at.

It follows that the judgment and order appealed from should be reversed. Both parties moved at the trial for the direction of a verdict, thus conceding, as indeed is obvious, that no disputed question of fact is involved. The complaint should therefore be dismissed, with costs to appellants in this court and the court below.

McLAUGHLIN and DOWLING, JJ., concur. INGRAHAM, P. J., and HOTCHKISS, J., dissent.